**SAINT PAUL MARINE TRANSPORTATION CORP. et al., on its own behalf as owner and on behalf of the Master and crew of the M/V ST. PAUL, Plaintiff,**

**v.**

**CERRO SALES CORPORATION, Dillingham Corporation, and the following officers and crew of the TUG MALIE, Capt. Frank P. Kapele, Valentine Lewis, Ronald Kamakaninui Kahapea, Bruno Ekela Ezera Kana, Liwai Kipu, Lance H. Julian, George Everett Tagen II, Joseph Louis Tavares, Jr., Paul Raquedan, Defendants.**

**Civ. No. 3082.**

United States District Court.

D. Hawaii.

April 29, 1970.

Paul F. Cronin, Honolulu, Hawaii, for plaintiffs Saint Paul Marine Transportation Corp., and others; Pratt, Moore, Bortz & Case, Honolulu, Hawaii, of counsel.

Roy A. Vitousek, Jr., Honolulu, Hawaii, for defendant Cerro Sales Corp.; George L. Waddel, Dorr, Cooper & Hays, San Francisco, Cal., of counsel.

William L. Fleming, Honolulu, Hawaii, H. Donald Harris, Jr., San Francisco, Cal., for defendant Dillingham Corp.; Lillick, McHose, Wheat, Adams & Charles, San Francisco, Cal., Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, of counsel.

### DECISION ON MOTION TO DISMISS PLAINTIFF'S LIFE SALVAGE CLAIM

PENCE, Chief Judge.

*Chronology of Events*

On June 23, 1968, at about 1515 the M/V St. Paul received a radioed S.O.S. from the U. S. Coast Guard that the S. S. North America was on fire in its vicinity, about 600 miles ESE of Honolulu, Hawaii. The St. Paul notified the Coast Guard of its own position. About 1600, the St. Paul received a message that the S. S. North America needed assistance and that its crew were in lifeboats.

The St. Paul diverted course and came upon the North America about 1700. It thereupon took aboard the crewmen from the two lifeboats, then notified the Coast Guard and the owners of the North America of its abandonment by officers and crew, its location and condition. The taking aboard of the crew from the lifeboats was routine, from a moderate sea.

At about 1900, seven members of the St. Paul's crew boarded the North America, fought and limited the fires, closed some compartment doors, then rigged a tow line to the St. Paul. When attempt was made to tow, the line parted. At about 2030 the boarding crew returned to the St. Paul. Meanwhile, before taking the tow, the St. Paul had cruised around the North America, searching for some missing seamen.

On June 24, the St. Paul still cruised around, still searching for missing crewmen. The North America still showed some fire and smoke. The sea was easy. At 1500, five of the St. Paul's crew again boarded the North America and again fought at the fire, checked possible water entries, and secured the same. Then at about 1600, another tow line was attached to the North America and again the St. Paul attempted to tow her; and again, about 1630, the tow line parted. About 1830 the St. Paul gave up any idea of tow and proceeded to Honolulu, landing the North America crew there on June 26, 1968.

Meanwhile, Dillingham Corporation (Dillingham), operating a tug line, had heard, on June 23, of the abandonment of the North America, and late on June 26 dispatched its tug Malie to attempt salvage. After searching the general area of its last reported position for two days, on July 2 the Malie found the North America, totally abandoned and still adrift, put a crew and line on her and on July 5, 1968, brought her into Honolulu.

On that same day, Dillingham, on behalf of itself and the Master and crew of the Malie, brought an action in this court (Civil No. 2845) for salvage against the North America and its million dollar cargo of copper ore, owned by the Cerro Sales Corporation (Cerro).

Thereafter followed normal motions for seizure, discovery, etc.

On March 14, 1969, eight months later, the St. Paul Marine Transportation Corp., plaintiff herein, filed a motion to intervene in Civil 2845, asking for both life salvage and property salvage awards.

On May 13, 1969, this court denied intervention because the case in chief was so near trial that the anticipated pretrial problems inherent in the St. Paul's claims would have seriously delayed trial of the claims involved in Civil 2845. The court did not dismiss St. Paul's action, treating it as a separate complaint as then filed, and leave was given to file "another" action.

On October 3, 1969, after trial, a consent order was entered in Civil 2845 (to which St. Paul was not a party) in which after making property salvage awards to Dillingham and the Master and crew of the Malie, further ordered:

"6. All persons who have not filed claims herein to the S. S. NORTH AMERICA or to the cargo aboard her on July 5, 1968 or who have abandoned claims filed herein, are hereafter barred forever from making any claim whatsoever thereto and are hereby adjudged and decreed to have

no claim, right, title or interest therein."

On November 12, 1969, plaintiff filed this present action, asking for a property salvage award from Cerro, et al., and "In the alternative" a life salvage award under 46 U.S.C. § 729 out of the property salvage award made in Civil 2845 to Dillingham and Master and crew of the Malie.

On March 19, 1970, Dillingham moved for summary judgment on the grounds that the rulings of this court in Civil 2845 upon St. Paul's motion to intervene (a) in denying same, and (b) in entering paragraph 6, *supra*, in its order of October 3, 1969, bar plaintiff's claims by *res judicata*, i. e., that both orders were final and appealable and no appeal was taken.

For the purpose of this decision, the court assumes the preceding events to be true.

*Conclusions of Law*

Dillingham, by its motion, has construed plaintiff's pleadings as a derivative claim against it (and the Master and crew of the Malie) for a life salvage award to be taken out of Dillingham's (etc.) prior property salvage award, *separate* and *apart* from plaintiff's property salvage claim against Cerro, and this court's decision is made in this context.

It is not necessary for this court here to determine whether or no plaintiff's life salvage claim is barred by *res judicata*. The facts upon which plaintiff's life salvage claims are based conclusively show, as a matter of law, that plaintiff never was and cannot here be entitled to such an award.

■ As a prerequisite to an award thereunder, 46 U.S.C. § 729 demands that a life salvage claimant forego an opportunity to engage in the really profitable work of property salvage, i. e., the life salvors who should be rewarded are those who, if they had not saved life, presumably could have become property salvors.[1]

■ Here, the St. Paul was in no manner inhibited in its property salvage efforts by the fact that it picked up the crew of the North America out of the two lifeboats. The St. Paul's crew members twice boarded the North America, carried on salvage work, and twice the St. Paul tried to tow her but each time the tow lines parted. Then the St. Paul gave up all salvage efforts—not to "save lives" but because it just could not tow the North America.

■ Moreover, while it is claimed that the St. Paul did perform work which aided in the ultimate salvage of the ship and cargo (a matter not herein decided), St. Paul's life salvage efforts, vis-a-vis the services of Dillingham in the actual and successful finding, boarding and towing of the North America into Honolulu, were not "rendered on the occasion of the accident."[2] It was on June 24, 1969, that the St. Paul gave up its own salvage attempts and proceeded to Honolulu. It was not until July 2, eight days later, that, after intensive and prolonged search, the Malie found the North America abandoned and adrift, and took her in tow. St. Paul's life salvage efforts were here not performed either actually or even substantially at the time the Malie was searching for and picking up the North America. Plaintiff therefore can have no derivative right under 46 U.S.C. § 729 to any of the property salvage awards made to Dillingham or the Master and crew of the Malie.

Dillingham's motion for summary judgment is granted. Its attorney will prepare the order.

As noted, this decision concerns itself only with plaintiff's life salvage claims and Dillingham's motion addressed thereto.

1. The Shreveport, 42 F.2d 524 (E.D.S.C. 1930).

2. 46 U.S.C. § 729; The Eastland, 262 F. 535 (N.D.Ill.1919); In re Yamashita-Shinnihon Kisen, 305 F.Supp. 796 (D.C. Or.1969).